In the Matter of LOUISE GROFF, on Behalf of Herself and CHARLES GROFF and Others, Infants, Respondent, against ARTHUR UZZILIA, Doing Business as BLUE DANUBE RESTAURANT, et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, March 21, 1956.

*Merton D. Meeker* for appellants.

*James Hyer* for claimant-respondent.

*Jacob K. Javits, Attorney-General* (*Daniel Polansky* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

HALPERN, J. Leo Groff, the decedent, applied to the appellant Uzzilia, the owner of the Blue Danube Restaurant in Cairo, New York, for a job in November, 1951. The decedent had become estranged from his family at about that time and had left his home, which was a short distance from the restaurant. The circumstances of the hiring of the decedent, as testified to by Uzzilia, were as follows: " He asked me if I could put him up as he had no place to stay, so I felt sorry for him and I let him sleep upstairs in the attic and he cleaned up for me."

Under the employment arrangement, the cleaning work in the restaurant was to be done during an hour or two in the morning,

six days a week, immediately after the owner opened up. The restaurant was usually opened by the owner about 8:30 A.M. and closed about midnight. The decedent was free to leave when he finished the cleaning work in the morning. For these services, the owner agreed to pay the decedent $15 a week, with the privileges of having one meal in the restaurant and living in the attic. The attic had not been finished for use as living quarters; it had no water or toilet facilities but it had a bed which had been left there by a former owner.

The appellant also operated a bowling alley which was connected with the restaurant by an alleyway. Decedent did no cleaning work in the bowling alley but he occasionally worked in the evening as a pin boy and he was paid separately for that upon the basis of the games played. The decedent was never called upon to do any cleaning work at any time other than during his usual morning hours; he was not required to be on call for service of any kind after the completion of his morning cleaning work. He had no key to the premises and he was not charged with any duties as a watchman or attendant.

Early in the morning of December 24, 1951, the appellant left for a holiday visit in New York City, leaving one Sherman in charge of his restaurant with instructions to Sherman to close the restaurant in the evening of that day and to check the furnaces on Christmas Day. The restaurant was not to be reopened until December 26th when the appellant expected to return from New York City. The decedent performed his usual cleaning services on the morning of December 24th and then left the premises. He was next seen about midnight celebrating the holiday at a nearby restaurant. He had a bottle of beer with him which the proprietor took away from him and the proprietor told him that he had "celebrated enough" and that he would give the bottle back to him the next day. The decedent then left and apparently returned to the Blue Danube Restaurant and climbed part way up the exterior staircase leading to the attic. The stairway was covered with snow and ice. Marks on the stairs and a broken rail indicated that the decedent fell down the stairway. He was found the next morning lying on the ground, dead of a skull fracture.

A claim was filed for death benefits under the Workmen's Compensation Law. The referee disallowed the claim but, upon review, the Workmen's Compensation Board by a two to one vote reversed and found that the decedent had been injured "in the course of his employment" and made an award of death benefits accordingly.

We do not believe that this award can be sustained. A sharp distinction must be drawn between the cases of employees who are required to live on the employer's premises, either by virtue of the contract of employment or by reason of the nature of the employment, and cases of employees who are merely permitted to reside on the premises for their own convenience but who are not required to do so. This case clearly falls within the second category (1 Larson on Workmen's Compensation Law, § 24.40). The decedent was not required to reside on the premises. His residing there did not serve his employer's convenience. He had fixed hours of employment; he was not on call for the performance of duties at any other time. He was allowed to reside on the premises as a favor, for his own convenience. As a matter of fact, his own home was only a five-minute walk from the restaurant and if it were not for the estrangement from his family he could conveniently have resided there.

The decedent was obviously not engaged in rendering any service for his employer at the time of his injury. It is true that the injury was due to the condition of the employer's premises and that the risk of injury by reason of the condition grew out of the decedent's residing on the premises but this cannot be made the basis of a compensation award, in the absence of a showing that the decedent had been required to reside on the premises. If it was claimed that the fatal accident was due to the employer's negligence in the maintenance of the stairway, the remedy of the decedent's administrator was to institute an action for the wrongful causing of death under the Decedent Estate Law.

The cases cited by the Attorney-General in support of the board's decision are all plainly distinguishable. Some of them deal with " on call " employees who are deemed to be within the course of their employment twenty-four hours a day (*Matter of Martin* v. *Plaut*, 293 N. Y. 617; *Matter of Lewis* v. *River Crest Sanitarium*, 277 App. Div. 914, affd. 302 N. Y. 655; *Matter of Wood* v. *Kings Park State Hosp.*, 266 App. Div. 804, affd. 293 N. Y. 919; *Matter of Watson* v. *Lapp*, 278 App. Div. 877; *Matter of Wiarda* v. *Wiarda*, 281 App. Div. 999). Other cases cited deal with employees who, while not " on call ", were required to reside on the premises. " We recognized in *Matter of Giliotti* v. *Hoffman Catering Co.* (246 N. Y. 279) and *Matter of Underhill* v. *Keener* (258 N. Y. 543) that some workmen are obliged through the nature of their employment to remain upon premises or in buildings all of the twenty-four hours of the day " (*Matter of Pisko* v. *Mintz*, 262 N. Y. 176, 178; see, also, *Matter of Culver* v. *Sevilla Home for Children*, 262 App. Div.

620, 266 App. Div. 705, motion for leave to appeal denied 290 N. Y. 930.)

In the case of *Matter of Madigan* v. *United Hosp.* (274 App. Div. 1077, motion for leave to appeal denied 299 N. Y. 799) it appeared that the decedent had been employed as a porter in a hospital and had been furnished room, board and laundry by the hospital. The hospital provided residential quarters for its porters on its premises in a cottage equipped and maintained for that purpose. While the porters were not explicitly required by the employment contract to reside on the premises, there were no accommodations elsewhere in the vicinity which they could obtain for the nominal amount allowed therefor by the hospital so that, as a practical matter, they were required to reside on the hospital premises.

The cases cited above are analyzed and discussed in Larson on Workmen's Compensation Law (§§ 24.00–24.30) and are distinguished from the cases of employees whose " residence on [the] premises [is] permitted but not required ", in section 24.40. As Dean Larson says (pp. 381–382) : '' When residence on the premises is merely permissive, injuries resulting from such residence are not compensable under the broad doctrines built up around employees required to reside on the premises. * * * The theory is, of course, that when residence is mandatory, it is the constraints and obligations of the employment that subject the employee to the risk that injured him, while if the residence is optional, the employee is free to do as he pleases and there is no continuity of employment obligation of any kind during the time the employee is voluntarily sleeping in a place provided for his convenience by the employer.'' (See *McQuivey* v. *International Ry. Co.,* 210 App. Div. 507, 508, and *Matter of Van Riper* v. *Newman,* 250 App. Div. 801.)

The award should be reversed and the claim dismissed, without costs.

FOSTER, P. J. (dissenting). I feel impelled to disagree with the opinion for reversal in this claim. On the admission of the employer in his report of injury the decedent was furnished a room and board on the employer's premises as part of his compensation. This admission was reluctantly confirmed by the employer in his oral testimony. If a room was furnished to the decedent as a part of his compensation it became an integral part of his employment. Once it can be found that occupancy was a part of the employment then it seems to me that whether it was permissive or not — i.e., whether it was the employee's choice or the employer's dictate — is immaterial. It is clear that the

board could reasonably find that decedent's death was occasioned by a risk inherent in the use of the premises, and hence in my view it arose out of and in the course of his employment.

I vote to affirm.

ZELLER and GIBSON, JJ., concur with HALPERN, J.; FOSTER, P. J., dissents and votes to affirm, in a memorandum in which BERGAN, J., concurs.

Award reversed and claim dismissed, without costs.